UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY WOLFF-BOLTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MANOR CARE-TICE VALLEY CA, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-02405-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION TO REMAND REMOVED ACTION AND DEFENDANTS' MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 18, 20 |

Plaintiffs allege violation of patient's rights, elder abuse/neglect, negligence, wrongful death, and survivorship. Defendants HCR ManorCare et al. removed the action to Federal Court on the basis of diversity jurisdiction. (Dkt. No. 1.) Plaintiffs subsequently filed an amended complaint for damages, which added two non-diverse defendants to the suit. (Dkt. No. 15 (First Amended Complaint ("FAC")).) Plaintiffs now move to remand the removed action to state court on the grounds that the Court lacks subject matter jurisdiction because the parties are no longer diverse.[1] (Dkt. No. 18.) In response, the Defendants move to strike the Plaintiffs' first amended complaint because Plaintiffs failed to request leave to amend the complaint despite adding a diversity-destroying defendant. (Dkt. No. 20.) After carefully considering the papers filed by the parties, Plaintiff's motion to remand is GRANTED and Defendants' motion to strike is DENIED.[2]

## FAC ALLEGATIONS

Plaintiffs are the survivors of decedent, Lynn Wolff ("Decedent"), a resident at ManorCare Health Services-Tice Valley (the "Facility") from approximately September 20, 2016 through

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 14 & 17.)
[2] The Court scheduled oral argument for July 6, 2017. When Defendant did not appear at the scheduled time, the Court took the matter under submission without holding any argument.

1   October 12, 2016. (FAC ¶ 2, 10.) The defendants "owned, leased, licensed, operated,
2   administered, managed, directed, and/or controlled and are "managing agents" of [the Facility]."
3   (*Id.* ¶ 3.) The FAC names as defendants: (1) ManorCare-Tice Valley, CA, LLC, an LLC with its
4   principal place of business in Ohio, but registered to do business in California (*Id.* ¶ 4); (2)
5   ManorCare Health Services-Tice Valley, the actual facility, located in Walnut Creek, CA (*Id.* ¶ 3);
6   (3) HCR ManorCare Inc., a Delaware corporation with its principal place of business in Ohio (*Id.*
7   ¶ 5); (4) Heartland Employment Services LLC, an LLC with its principal place of business in
8   Ohio, which employs the Facility employees, including Rodger Hogan (*Id.* ¶ 6); (5) John Gallick,
9   the Western Regional Director of Operations for HCR/ManorCare and a citizen of California (*Id.* ¶
10  7); and (6) Rodger Hogan, the Administrator of the Facility and a citizen of California. (*Id.* ¶ 8.)

Decedent was an elder who had undergone surgery just prior to her admission to the Facility, so defendants knew she was at risk for falls. (*Id.* ¶ 16.) Despite this knowledge, the defendants "did not take adequate steps to prevents falls, did not put fall risk interventions including a bed and/or chair alarm into place, did not properly assess or adequately care for [Decedent], and did not keep her safe and free from injury at [the Facility]." (*Id.* ¶ 16.)

On September 22, 2016, Decedent had her first unwitnessed, documented fall at the Facility while getting into bed without assistance. (*Id.* ¶ 17.) Decedent did not have a "meaningful and informed assessment for injury" after the fall and no changes were made to Decedent's care; however, the Facility began giving Decedent Oxycodone regularly for pain, which caused her to be "sleepy, confused, and made it difficult for her to get out of bed." (*Id.* ¶ 17.)

Decedent had another documented fall at the Facility on October 2, 2016, but this time it was witnessed by a nurse passing by Decedent's room. (*Id.* ¶ 18.) Again, Decedent did not have a proper assessment following the fall. (*Id.* ¶ 18.) On October 5, 2016, Decedent complained about pain in her right hip, but Decedent again did not receive a proper assessment and Decedent's physician was not notified. (*Id.* ¶ 18.)

Five days later, Decedent had a third undocumented fall, which was unwitnessed, and again, her physician did not perform a proper assessment. (*Id.* ¶ 19.) Still no changes or

2

1 precautions were taken to protect Decedent. (*Id.* ¶ 19.)

2 After the three falls and almost no changes to Decedent's care, Decedent was discharged from the Facility on October 12, 2016. (*Id.* ¶ 20.) While at home, Decedent was primarily bed bound, but complained that her hip and leg were in pain. (*Id.* ¶ 20.) Decedent received an x-ray, which revealed that she had "suffered a right periprosthetic fracture and dislocation, and she underwent a right hip resection anthroplasty." (*Id.* ¶ 20.) Days later, Decedent died; her death was the result of injuries she suffered while she was a resident at the Facility. (*Id.* ¶ 20.) Defendants failed to notify Decedent's family of her condition, which caused them emotional distress and injury. (*Id.* ¶ 27.)

Each of the defendants "had responsibility for meeting the basic needs of [Decedent], including her safety, nutrition, hydration, hygiene and medical care." (Dkt. No. 26.) Specifically, John Gallick and Rodger Hogan are responsible for "mak[ing] and approv[ing] key decisions concerning [the Facility]'s day-to-day operations." (*Id.* ¶ 8.) At the time Decedent was admitted to the Facility, "[d]efendants knew that according to their plan to increase profits at the expense of residents such as [Decedent], the operation of [the Facility] was neither designed, administered, nor funded in a manner reasonably necessary to provide adequate care, oversight and integration of [Decedent] into [the Facility]." (*Id.* ¶ 25.)

Defendants were previously sued as a result of injuries to another resident of the Facility, in addition to being cited for violating regulations set by the California Department of Public Health. (*Id.* ¶ 3.) Defendant Rodger Hogan "signed plans of correction" in regards to the citations. (*Id.* ¶ 31.)

**PROCEDURAL HISTORY**

On March 21, 2017, Plaintiffs filed this action in state court alleging violation of patient's rights, elder abuse/neglect, negligence, wrongful death, and survivorship. The following month, the then-named defendants removed the action to Federal Court. (Dkt. No. 1.) On May 4, 2017, Defendants filed a motion to strike, along with a motion to dismiss. (Dkt. Nos. 8, 10.) On May 16, 2017, within 21 days of the filing of the Defendants' motions to dismiss, Plaintiffs filed an amended complaint which added two non-diverse defendants to the suit: Mr. Gallick and Mr.

Hogan. The FAC also "added facts detailing prior complaints and a history of violations of regulations by [d]efendants, corrected the parent company's corporate name . . . and added Ohio citizen Heartland Employment Services" (Dkt. No 18. at 3.)

Plaintiffs now move to remand the removed action to state court on the grounds that the Court lacks subject matter jurisdiction because the parties are no longer diverse. (Dkt. No. 18.) In response, Defendants move to strike the Plaintiffs' FAC on the grounds that Plaintiffs failed to request leave to amend the complaint despite adding a diversity-destroying defendant. (Dkt. No. 20.)

**LEGAL STANDARD**

"A motion to remand is the proper procedure for challenging removal." *Leo v. Alameda Cnty. Med. Ctr.*, No. 06-03799, 2006 WL 2669001, at *1 (N.D. Cal. Sept. 18, 2006). A district court must remand a removed action "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Courts must "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

In federal courts, subject matter jurisdiction may arise from either "federal question jurisdiction" or "diversity of citizenship" when the amount in controversy exceeds $75,000. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Defendants removed on the grounds of diversity jurisdiction.

**DISCUSSION**

Plaintiffs move to remand pursuant to 28 U.S.C. Section 1447(c) on the grounds that the Court lacks subject matter jurisdiction because with the filing of the FAC, and, in particular, the addition of Mr. Gallick and Mr. Hogan as defendants, the parties are no longer diverse. (Dkt. No. 18 at 2[3].) Defendants contend that Mr. Gallick is actually a resident of Pennsylvania; however, they do not dispute that Mr. Hogan is California citizen, so diversity would still be destroyed by

---

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

4

the FAC.

Plaintiffs did not have the unilateral right to add the individual defendants to the complaint. Although Federal Rule of Civil Procedure 15(a)(1)(B) allows parties to amend a pleading as of right 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), district courts have held "that when an amendment would deprive the court of subject matter jurisdiction, a party may not rely on Rule 15(a) to amend a pleading without leave of court; such an amendment must instead be analyzed pursuant to section 1447(e)." *Dooley v. Grancare, LLC*, No. 15-3038, 2015 WL 6746447, at *2 (N.D. Cal. Nov. 5, 2015); *see also Chan v. Bucephalus Alternative Energy Grp., LLC*, No. 08-04537, 2009 WL 1108744, at *3 (N.D. Cal. Apr. 24, 2009) (holding that the permissive amendment under Rule 15(a) does not apply when a plaintiff amends her complaint after removal to add a diversity-destroying defendant).

28 U.S.C. Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Defendants argue that because Plaintiffs did not move for leave to amend, the Court should strike the FAC and not even analyze whether joinder is appropriate. *See Dooley*, 2015 WL 6746447 at * 2; *Peralta Cmty. Coll. Dist. v. United Nat. Ins. Co.*, No. 04-03287, 2004 WL 2254621, at *1 (N.D. Cal. Oct. 5, 2004). However, even where a plaintiff did not move for leave to amend, some courts have exercised their discretion under section 1447 to determine if joinder is appropriate. *See*, *e.g.*, *Chan v. Bucephalus Alternative Energy Grp., LLC*, No. 08-04537 JW, 2009 WL 1108744, at *3 (N.D. Cal. Apr. 24, 2009). In *Chan*, the court held that plaintiff's amended complaint was beyond the scope of Rule 15(a) because it joined a defendant that would destroy diversity. However, the court nonetheless denied the defendant's motion to strike the amended complaint and remanded the case to state court because it found that joinder was appropriate under section 1447(e).

This Court believes the better approach is to presently consider whether joinder is appropriate, rather than strike the FAC, deny the motion to remand, and then decide the issue after Plaintiffs file a formal motion for leave to amend and another motion to remand. Requiring Plaintiffs to file a motion for leave to amend, and thus requiring a whole new round of briefing, is

5

not consistent with Rule 1's command that the Court and the parties construe, administer and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Thus, the Court will proceed to whether joinder under section 1447 is appropriate.

Courts consider several factors when deciding whether to exercise their discretion to allow an amendment that would add a diversity-destroying defendant:

> (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.

*IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). Courts "look at the factors as a whole" when analyzing whether a diversity-destroying amendment should be allowed. *Id.* at 1013. "Any of the factors might prove decisive, and none is an absolutely necessary condition for joinder." *Yang v. Swissport USA, Inc.,* 2010 WL 2680800 * 3 (N.D. Cal. July 6, 2010). Additionally, many of the factors can be looked at together because they are "intertwined"—such as whether joinder is desired solely to defeat diversity and whether the claim against the diversity-destroying defendant is valid. *Sabag v. FCA US, LLC*, No. 16-CV-06639 CAS (RAOX), 2016 WL 6581154, at *6 (C.D. Cal. Nov. 7, 2016).

**A.     The new defendants sought to be joined are needed, even if not necessary**

Federal Rule of Civil Procedure Rule 19 requires joinder of parties "whose absence would preclude the grant of complete relief, impede the putative party's ability to protect its interests, or would subject any of the parties to the danger of inconsistent obligations." *Sandhu v. Volvo Cars of N. Am., LLC*, No. 16-04987, 2017 WL 403495, at *2 (N.D. Cal. Jan. 31, 2017). Plaintiffs contend that it is not yet known whether failure to join these defendants would preclude the grant of complete relief. (Dkt. No. 26 at 6.)

Regardless of whether Mr. Hogan is a necessary party under Rule 19, "amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19." *IBC Aviation*

6

*Servs., Inc.*, 125 F. Supp. 2d at 1012 (holding that joinder of a diversity-destroying defendant was required where he was more than "tangentially related" to the claims). A party should be joined under section 1447(e) "when failure to join will lead to separate and redundant actions" but joinder will not be allowed "when defendants are only tangentially related to the cause of action or would not prevent complete relief." *Sandhu*, 2017 WL 403495, at *2 (internal citations and quotations omitted) (holding that courts should consider whether a party can obtain complete relief, not just primary relief, without the party sought to be joined). Plaintiffs claim that Mr. Hogan is a necessary party because while Decedent was a resident of the Facility, all of the defendants (including Mr. Gallick and Mr. Hogan) "had a substantial caretaking or custodial relationship, involving on-going responsibility for" her. (FAC ¶ 10.) Thus, failure to join could lead to separate and redundant actions because Mr. Hogan is more than tangentially related to the cause of action.

To show that joinder is not necessary, Defendants cite *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999), in which the court denied joinder of Indian Tribes because they were adequately represented by the United States. *Washington* is distinguishable because the federal government represents Indian Tribes as the trustee of the Indian tribes' rights. *Id*. Here, we do not yet know whether any of the originally-named defendants adequately represent Mr. Hogan.

### B. The statute of limitations is not a bar

Defendants emphasize that the statute of limitations would not prevent a separate action against Mr. Hogan. (Dkt. No. 24 at 5.) True, but it would not be judicially efficient. *See Dollens v. Target Corp.*, No. 11-03265, 2011 WL 6033014, at *3 (N.D. Cal. Dec. 5, 2011) (holding that because the case was in its early stages, "the interests of efficiency and justice would be served by allowing claims against both Target and Ms. Moya to be resolved in one action.")

### C. The delay in requesting joinder has been explained

Joinder was not significantly delayed, as Plaintiffs filed an FAC within 21 days of Defendants' initial motion to dismiss and motion to strike. Defendants contend that Plaintiffs have not explained why they did not initially add Mr. Gallick and Mr. Hogan to the suit. Not so. Plaintiffs assert that they did not include Mr. Gallick in their initial complaint because they did not

7

discover his responsibilities in regards to the Facility until Plaintiffs were preparing an opposition to Defendants' initial motion to strike. (Dkt. No 18 at 5.) In preparing their opposition, Plaintiffs also discovered that Mr. Gallick is the supervisor of Mr. Hogan and "that together Mr. Gallick and Mr. Hogan could be considered the governing body of the Facility in that they make and approve key decisions concerning the Facility's day-to-day operations" (*Id*. at 5-6; FAC ¶ 30 (citing 42 C.F.R. Section § 483.75(d))). Additionally, Plaintiffs did not discover until after filing their complaint that Mr. Hogan signed the plans of correction in response to citations the Facility received and thus that "Hogan made promises to the State to correct failures which have led to safety hazards and actual injury to residents." (Dkt. No. 26 at 7.) Courts have excused delayed joinder for much longer periods of time. *See, e.g., Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1083 (C.D. Cal. 1999) (holding that six weeks after filing his initial complaint was not an unreasonable amount of time to file an amendment).

### D. Joinder is not intended solely to defeat federal jurisdiction

"Suspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants." *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d at 1012; *see also Sabag,* 2016 WL 6581154, at *6 (holding that because the plaintiff's claim against the diversity-destroying defendant was facially legitimate, the plaintiff's motive was not solely to defeat federal jurisdiction).

Defendants contend that because Plaintiffs "cannot recover more or different relief" by adding Mr. Hogan, this is evidence that Plaintiffs added Mr. Hogan to the suit solely to defeat diversity. (Dkt. No. 24 at 7.) As support Defendants cite *Farrugia v. Allstate Ins. Co.*, No. 07-00212, 2007 WL 781782, at *2 (N.D. Cal. Mar. 8, 2007), in which the court denied the plaintiff's motion for leave to amend to join an insurance agent as a new defendant. *Farrugia* is distinguishable, however, because there the court reasoned that adding the defendant was a futile exercise because "California courts have recognized the general principle that an agent or employee of an insurance company is not liable to an insured while acting in the scope of the agency or employment." *Id*. Further, the plaintiff did not explain why joinder was delayed. *Id*. Here, in contrast, the Court cannot conclude that the claim against Mr. Hogan is futile and

8

1   Plaintiffs have provided an explanation for the delayed joinder.

2   Defendants also cite *Buttons v. Nat'l Broad. Co.*, 858 F. Supp. 1025, 1027 (C.D. Cal. 1994), for the proposition that diversity-defeating joinder should not be allowed if a plaintiff's monetary damages could be fully satisfied by other diverse defendants. In *Buttons*, however, the court also found that "plaintiff ha[d] not made out a strong case for joinder" because the diversity-destroying potential defendants had no responsibility over the production or content of the show, which was the subject of the claim. *Id*. Here, Plaintiffs allege how Mr. Hogan has responsibility over the Facility.

### E. The claims against the new defendants appear valid

"The existence of a facially legitimate claim against the putative defendant weighs in favor of permitting joinder under section 1447(e)." *Taylor v. Honeywell Corp.*, No. 09-4947, 2010 WL 1881459, at *3 (N.D. Cal. May 10, 2010). Viewing the allegations in a light most favorable to Plaintiffs, it appears that Plaintiffs have a valid claim against Mr. Hogan. Mr. Hogan has a substantial interest in the action because he and Mr. Gallick are "the managing agents for the Facility, and the people who truly make the decisions." (Dkt. No 18. at 4.)

### F. Denial of joinder will prejudice Plaintiffs

Finally, courts consider any prejudice to a plaintiff that would result from denying joinder, such as forcing a plaintiff "to choose between redundant litigation arising out of the same facts and involving the same legal issues or foregoing its potential claims against [the proposed new defendant.]" *IBC Aviation Servs., Inc.* 125 F. Supp. 2d at 1013. Defendants assert that Plaintiffs will not be prejudiced if their motion is denied because their claims "do not personally implicate Rodger Hogan." (Dkt. No 24 at 7.) However, as stated above, Plaintiffs assert that Mr. Hogan is liable because of his influence over the Facility. Thus, Plaintiffs would be prejudiced by having to pursue two separate lawsuits if joinder is not allowed. (Dkt. No. 26 at 10.)

***

Ultimately, the decision to allow joinder and remand the case is at the discretion of the court. After reviewing the relevant factors, the Court finds that joinder is appropriate. Mr. Hogan was directly involved in the conduct at issue in the lawsuit; Plaintiffs have satisfactorily explained

their minimal delay in naming him as a defendant; and to deny joinder could result in inconsistent verdicts and a waste of resources.

**CONCLUSION**

For the reasons stated above, the Court permits the joinder of Mr. Hogan as a Defendant pursuant to 28 U.S.C. § 1447(e). Accordingly, Defendants' motion to strike is DENIED and Plaintiffs' motion to remand is GRANTED. This action is remanded to the Superior Court for Contra Costa County.

**IT IS SO ORDERED.**

Dated: July 6, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge